## Isaac Stiles *versus* Thomas Emerson.

The horses and carriages of a line of stagecoaches were conveyed to the defendant, subject to the right of R to become the owner thereof upon the performance of certain conditions. The defendant thereupon by indenture leased the property to R for a term of years, and R was to carry on the business for his own account; and R, on his part, covenanted that he would employ the horses and carriages in the transportation of passengers, &c., that he would keep the stage books at such houses as the defendant should direct, that he would fulfil a contract for the transportation of the mail, the performance of which had been guarantied by the defendant, that he would pay the expenses of maintaining the horses, carriages, &c., and of keeping the same in good condition and repair during the term, that he would replace such portion thereof as should die or be deteriorated, with others to be purchased in the name of the defendant, and that he would indemnify the defendant from all claims and expenses arising therefrom or from the business in which the same might be engaged; and in case of a failure on the part of R to perform these covenants, the defendant was authorized to take possession and put an end to the lease. It was *held*, that the defendant was not responsible for the price of a quantity of harnesses purchased of the plaintiff by R during the term, for the use of such line of stagecoaches.

THIS was assumpsit to recover for certain harnesses furnished and repaired by the plaintiff in the autumn of 1830, and spring of 1831, to be used on a line of stagecoaches between Boston and Nashua. The harnesses were alleged to have been

supplied and repaired on the credit or for the actual use of the defendant.

The action was tried upon the general issue, before *Morton* J

It appeared, that the articles were charged on the plaintiff's book to S. H. G. Rowley, agent.

The plaintiff called B. L. Jones as a witness, who testified, that in 1830 he was employed by Rowley as the driver of a stagecoach from Nashua to Boston ; that the witness, by the direction of Rowley, purchased six harnesses of the plaintiff, of the value of 75 or 80 dollars ; that they were bought for and used on the line in question ; that the harnesses used on such line were frequently repaired by the plaintiff; that the witness did not know who were the owners of the line ; and that he contracted with Rowley, received his wages from him, accounted with him for all moneys received, and knew no one else as owner.

The plaintiff then called James Barker as a witness. Bar ker testified, that in a conversation with the defendant, the defendant told him that he was the owner of the line in question ; that it was run at his expense and risk ; that Rowley was his agent ; that Rowley's acts should be his acts and he would pay the bills.

The plaintiff also produced other evidence for the purpose of proving, that the defendant was a proprietor of the line of stagecoaches between Boston and Nashua.

James Newell, who was called as a witness by the plaintiff, testified, that he was the former owner of the line of stagecoaches from Nashua to Boston ; that he sold out to Edward H. Robbins, for the sum of $4000 ; that Robbins gave his note for the sum of $1000, and was to pay the residue of the purchase money by transporting the mail, for which he gave a bond.

The defendant then offered in evidence an indenture in two parts, made on September 22, 1829, between Robbins and the defendant, which set forth, that Robbins was the owner of the line in question, on the purchase of which he had given his two promissory notes in the sum of $500 each, and had become surety for Rowley in a contract with Newell

and others for the conveyance of the mail between Boston and Nashua ; that Robbins, by indenture, on June 11, 1829, had leased the property to Rowley for four years, and had agreed with Rowley, that if Rowley should pay the two notes and perform the contract for the transportation of the mail, Robbins would convey the property to him ; that the defendant had agreed to take up the notes of Robbins, and had guarantied to Robbins the performance of his contract with Rowley, for the transportation of the mail ; and that in consideration thereof Robbins conveyed all his interest in the property to the defendant.

The defendant also offered in evidence, an indenture made on September 22, 1829, between the defendant and Rowley, by which, after a recital of the conveyance to the defendant by Robbins, and for the consideration as in such indenture set forth, the defendant leased the property to Rowley for the term of four years from January 1, 1829. Rowley, on his part, covenanted, that he would employ the horses and carriages in the transportation of the mail and passengers ; that he would keep the books at such houses as the defendant should direct, and make them the starting and delivering places ; that he would fulfil the contract with Newell and others for the transportation of the mail ; that he would indemnify Robbins as his surety, and the defendant on his guaranty to Robbins ; that he would pay all the charges and expenses of supporting and maintaining the horses, carriages and appurtenances during the term, and, at his own expense, constantly keep the same in good condition and repair, and replace such of them as should die, or be destroyed, or become unfit for service, or be materially deteriorated, with others of like quality and of at least equal value, purchased in the name of the defendant ; and that he would indemnify the defendant from all claims, expenses and losses arising from or on account of the support, repair, purchase or exchange of such horses, carriages and appurtenances, or from the business in which the same might be engaged. It was further provided by the indenture, that if Rowley should in any thing fail to perform such covenants, the defendant might take possession of the leased premises, and put an end to the lease

The defendant produced three depositions of Mahlon Cotterill, who was present at the conversation between the defendant and Barker. Cotterill, in one of the depositions, testified, that when the defendant said, that he owned the property and that Rowley was his agent, he also, at the same time, stated, that he was personally bound to carry the mail, that the property was bought by him for Rowley and leased to Rowley, and that if any thing was made by the line, Rowley was to have it. It appeared, however, that in a preceding deposition, the witness did not state the latter part of this conversation; but he afterwards stated the reason to be, that he did not know that it was material, and that he was not interrogated respecting it, nor asked to state the whole conversation.

The defendant further produced Hamilton Davidson as a witness, who testified that he bought this property of Rowley in 1831 ; that he paid to the defendant the sum of $2600, which was the amount of his claim against Rowley on account thereof; and that the residue of the purchase money was paid to Rowley.

The defendant also called Horace Rowley, who testified, that he was almost constantly in the stage-office of his father, S. H. G. Rowley, where all the way-bills of the line in dispute were settled ; that his father had all the profits, and made all the contracts ; that the defendant never claimed any of the profits, to his knowledge ; and that his father advertised as agent. The defendant also produced several witnesses who testified that they had furnished hay, grain, &c., for the line in question, on the account of Rowley ; and that they had known no other person to be responsible therefor.

The defendant admitted, that the evidence introduced by the plaintiff proved that the defendant was an owner ir the line of stagecoaches, when the harnesses were furnished and repaired by the plaintiff; but he contended, that the evidence produced by him proved, that he was not liable in this action.

The case was thereupon withdrawn from the jury by consent.

If upon these facts the Court should be of opinion, that the plaintiff had a right to recover in this action, then the defend-

28 *

Stiles
v.
Emerson.

Jan. 23d,
1836.

April term
1836.

ant was to be defaulted ; otherwise the plaintiff was to become nonsuit.

*F. Dexter* and *Mann*, for the plaintiff.

*Hoar* and *Fletcher*, for the defendant.

SHAW C. J. delivered the opinion of the Court [after stating some of the facts]. It is perhaps not very material in what form the plaintiff may have made the charge in his books ; his right to recover must depend upon the actual state of facts, without regard to the form of the charge. Such form may often be important as evidence to show whom the party considered liable at the time of giving the credit, which is sometimes a material fact in such cases.

In order to recover in the present case, it is necessary to show, either that the contract was made with the defendant, or that the work was done on his credit, or that it was procured by his agent on his account, and that it went to his benefit.

Though there may be some doubt upon the evidence, yet when taken together and compared, we think that it supports neither of the propositions. Jones was the agent for Rowley, and acted only for him. Suppose the articles had been delivered on the order of Rowley, it would be the same as at present. If the plaintiff did not choose to deliver the articles on the credit of Rowley, he should have ascertained whether any other person was responsible, and if not satisfied, might have refused altogether. The evidence, we think, shows that the articles were furnished on the credit of Rowley alone.

Then the question recurs, whether Rowley stood in such a relation to the defendant, that the latter is bound by his acts. It not unfrequently happens, that one on whose credit a party supplying articles did not at all rely, and who indeed was wholly unknown to such party, may be responsible ; as in case of a dormant partner, or undisclosed principal. If this stood merely upon the parol evidence, there would be considerable ground to maintain, that the defendant admitted that Rowley was his agent. But the true relation between Rowley and the defendant is disclosed by the indenture of September 22, 1829. From this it appears, that Rowley was the lessee of the coaches, horses and stage property, for a term of years, having the possession and right of possession,

carrying on the business for his own account and at his own risk, under stipulations to keep the whole in good repair, and to replace that which should become worn out or deteriorated, and that the defendant had no power to take possession, unless Rowley should fail in the performance of the stipulations on his part, or some of them. The condition of the lessee, Rowley, then, was that of a principal and not of the agent of the defendant, both as to the expenses of the line of stages, and as to repairs. The only circumstance which could occasion doubt is, that by the terms of the contract, all articles to replace those which were worn out, were to be purchased in the name of the defendant. But when the relation of the parties is considered, and the purpose of this provision, we think it will not alter the case. It is like a stipulation that a party will purchase articles at his own cost, and forthwith deliver them to a third person for his own use and benefit. If a purchase is made in good faith, the party for whose use the goods are purchased is not responsible ; the purchaser is not his agent. So if a lessee of real estate were to covenant to replace fixtures, and pursuant to such agreement should purchase articles on credit for the express purpose of replacing fixtures for the use and benefit of the landlord, on being annexed they would become part of the freehold, and go to the use of the landlord, yet the latter would not be responsible for them. We think therefore that these articles were purchased of the plaintiff by Rowley on his own credit, for his own account, and that the defendant did not stand in such a relation to Rowley, as to be responsible for his acts.

And when the actual relation in which the defendant thus stood to Rowley is explained and shown by the contract between them, it is reconcilable with the parol testimony. In a certain sense Rowley was the agent of the defendant. The latter, by his contract with Robbins and others, was responsible for carrying the United States mail. He had stipulated with Rowley to do this on his behalf, and to indemnify him. If Rowley should fail to do this, the defendant, on his own obligation, would be bound to do it. To this extent, therefore, he stood responsible for the doings of Rowley, the latter not being an agent but a sub-contractor, for whom the defend-

ant was guarantor.   This explains the conversation with Bar ker.   The defendant was in fact the general owner of the property, and was contractor for carrying the mail.   Cotteril, who was present at the same conversation, states, that when Emerson said that he owned the property and that Rowley was his agent, he said at the same time, that he was personally bound to carry the mail, that the property was bought by him for Rowley and leased to Rowley, and if any thing was made by the line, Rowley was to have it.   This is perfectly consistent with the relation of the parties, as shown by the indentures.   It is true that in a former deposition the witness did not state the latter part of this conversation ; but he states the reason to be, that he did not know that it was material, that he was not interrogated respecting it, nor asked to state the whole conversation.

*Plaintiff nonsuit.*